IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CANOPIUS US INSURANCE, INC. | § § § | |
| v. | § § | CIVIL ACTION NO. 4:13-CV-01624 |
| TOM WYATT D/B/A/ BLUE OCEAN CLUB A/K/A CLUB ICU, DEBRA AND CURTIS STEWARD, INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF CURTIS STEWART III, AND KIMBERLY KIBBLE AS NEXT FRIEND OF C.S. AND L.S., MINORS | § § § § § § § § § | |

**CANOPIUS' REPLY TO DEBRA STEWARD'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I. ARGUMENT AND AUTHORITIES

    A.    **The Assault and Battery Exclusion Endorsement excludes coverage for all claims or suits arising out of assault and/or battery, as well as the specific allegations levied against Tom Wyatt and Club ICU in the underlying action.**

1.    Debra Steward (hereafter "Steward") argues that, simply because the subject policies do not physically contain the Assault and Battery Exclusion Endorsement, the endorsement's terms are not included in the policy. Therefore, Steward maintains the "eight corners rule" precludes summary judgment in favor of Canopius. Steward is wrong.

2.    Canopius US Insurance, Inc. (hereafter "Canopius") acknowledges the subject policies do not contain the Assault and Battery Exclusion Endorsement. However, the application, quote, and binder for each policy specified that any policy issued by Canopius to Lexus and Diamon, LLC d/b/a Club ICU, formerly known as Blue Ocean Club (hereafter "Club ICU") would include the endorsement. Moreover, Karen Morgan, the authorized agent of Club ICU, testified the

endorsement's inclusion was agreed upon by the parties.[1] Nevertheless, a scrivener's error resulted in the endorsement being left out of the policies.[2] As a result, Canopius seeks reformation of the policies to include the Assault and Battery Exclusion Endorsement.

3. It is clear reformation of contracts, including insurance policies, is well-established in Texas. *See Howard v. INA County Mut. Ins. Co.*, 933 S.W.2d 212, 219 (Tex.App—Dallas, 1996, writ denied); *see also Cherokee Water Co. v. Forderhause,* 741 S.W.2d 377, 379 (Tex. 1987); *Harbor Ins. Co. v. Urban Const. Co.*, 990 F.2d 195, 199 (5th Cir. 1993). Therefore, if a policy is reformed to include a modifying endorsement, as is the case here, the terms of the modifying endorsement becomes a part of the policy and would be considered when analyzing whether an insurer has a duty to defend or indemnify under the "eight corners rule." *Id.*; *see also Harbor Ins. Co. v. Urban Construction Co.*, 990 F.2d at 199-20; *see also GuideOne Elite Ins. Co. v Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (discussing the "eight corners" doctrine).

4. Here, the testimony of Karen Morgan[3] and Tom Wyatt[4], coupled with the affidavits of Laura Bates[5] and Holly Beers[6], as well as the applications, quotes, and binders for the policies[7] unequivocally establish the Assault and Battery Exclusion Endorsement was intended to be a part of any policy issued by Canopius to Club ICU. Thus, reformation is proper and the

---

[1] See deposition transcript of Karen Morgan 31:19-33:14, 34:21-40:12, 104:19-106:8 attached as Exhibit "M" to Canopius' Motion for Summary Judgment and Memorandum of Law in Support.
[2] See affidavits of Holly Beers as Exhibits N to Canopius' Motion for Summary Judgment and Memorandum of Law in Support; see deposition transcript of Karen Morgan 107:21-108:3 attached as Exhibit M to Canopius' Motion for Summary Judgment and Memorandum of Law in Support.
[3] Id.
[4] See deposition transcript of Tom Wyatt 22:9-21, 58:6-59:13 attached as Exhibit L to Canopius Motion for Summary Judgment and Memorandum of Law in Support.
[5] See affidavit of Laura Bates attached as Exhibit O to Canopius Motion for Summary Judgment and Memorandum of Law in Support.
[6] See affidavit of Holly Beers attached as Exhibits N to Canopius Motion for Summary Judgment and Memorandum of Law in Support.
[7] See Exhibits "A" through "K" attached to Canopius Motion for Summary Judgment and Memorandum of Law in Support.

endorsement's terms should be considered when determining whether Canopius has a duty to defend or indemnify Club ICU.

5. Furthermore, the Assault and Battery Exclusion Endorsement states in pertinent part, that there is no coverage for "**any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts.**"[8] Such language negates Canopius' duty to defend or indemnify Club ICU because the underlining lawsuit stems from a shooting incident, undoubtedly an act "arising out of assault and/or battery", that occurred on Club ICU's premises. As such, reformation of the policy to include the endorsement would negate coverage for any damage, cost or expenses arising from such action.

6. Moreover, Steward specifically alleges that Club ICU was negligent by failing "to retain, train, and/or provide adequately trained security personnel or law enforcement, despite the knowledge of significant, yet preventable criminal activity on the premises."[9] However, the Assault and Battery Exclusion Endorsement specifically states the insurance does not apply "**with respect to any charges or allegations of negligent hiring, training, placement, or supervision.**"[10] Therefore, the allegations levied by Steward arise out of assault and battery and are specifically excluded from coverage by the endorsement.

7. Simply put, the necessary parties agreed any policy issued by Canopius to Club ICU would include the Assault and Battery Exclusion Endorsement. As a result, the policies should be reformed to include the Assault and Battery Exclusion Endorsement because that was the intention of the parties. Once reformed, the terms of the endorsement are included in the policy

---

[8] See Exhibit P to Canopius Motion for Summary Judgment and Memorandum of Law in Support.
[9] See Exhibit Q to Canopius Motion for Summary Judgment and Memorandum of Law in Support; see also page 5 of Debra Steward's Response to Plaintiff's Motion for Summary Judgment.
[10] See Exhibit P to Canopius Motion for Summary Judgment and Memorandum of Law in Support.

3

and clearly exclude coverage for the acts complained of in the underlining action. Accordingly, Canopius does not have a duty to defend or indemnify Club ICU in the underlining action because same is negated by the Assault and Battery Exclusion Endorsement and summary judgment in favor of Canopius is proper.

      B.    **Karen Morgan was the agent of Tom Wyatt and Club ICU, not Canopius, and had authority to bind with respect to the insurance policies.**

8. Steward also contends Canopius' Motion for Summary Judgment should be denied because Karen Morgan must be considered the agent of Canopius, rather than the agent of Club ICU, even though both Tom Wyatt and Karen Morgan testified Karen Morgan was Club ICU's agent. Steward's argument relies solely upon admissions by Canopius, which do not exist, and Sections 4001.051 and 4001.052 of the Texas Insurance Code, which are not applicable. Consequently, Steward's argument lacks merit and should be disregarded.

9. Specifically, Steward claims Karen Morgan performed a number of acts qualifying her as the agent of Canopius according to the Texas Insurance Code. Steward also states Canopius admitts Karen Morgan performed certain acts establishing her agency relationship with Canopius under the Texas Insurance Code. Both propositions are incorrect.

10. Steward fails to identify any act Karen Morgan performed or provided which would qualify her as the agent of Canopius under Section 4001.051 of the Texas Insurance Code. Steward even failed to classify which specific subsections of Section 4001.051 applied. As such, Steward provided no evidence or allegation to support her contention that Karen Morgan qualifies as the agent of Canopius, rather than the agent of Club ICU, under Section 4001.051.

11. Additionally, Steward incorrectly represents to the Court that Canopius admits Karen Morgan performed certain acts establishing she was the agent of Canopius. Canopius did no such thing. While Steward references Canopius Responses to Requests for Admission as

4

evidence for her position, a review of those Responses to Requests for Admission reflects Canopius unequivocally denied Karen Morgan or her agency, Patriot Insurance Agency, performed any such acts. Consequently, Steward's own evidence is erroneous and contradicts her position.

12. Regardless, Steward's reliance on Sections 4001.051 and 4001.052 of the Texas Insurance is misguided. "Where the policy is issued at the instance of and delivered to the insured through the broker who collects a premium and shares in the commission paid by the insurer, such an intermediary is considered the agent of the insured. *Esses Ins. Co. v Redtail Prods., Inc.*, 1999 WL 627379 at *3 (N.D. Tex. Aug. 17, 1999), aff'd sub nom. *Essex Ins. v. Redtail Prods.*, 213 F.3d 636 (5th Cir. 2000)(citing *Continental Cas. Co. v. Bock*, 340 S.W.2d 527, 532 (Tex. Civ. App. 1960, writ ref'd n.r.e.)). This is precisely the case here.[11] Thus, Karen Morgan was the agent of Club ICU, a point she and Tom Wyatt acknowledged.[12]

13. Furthermore, Section 4001.051 of the Texas Insurance Code applies only "for purposes of the liabilities, duties, requirements and penalties provided by this title" a regulatory title that imposes certain licensing and certification requirements on insurance agents. *See Interspan Distrib. Corp. v. Liberty Ins. Underwriters, Inc.*, 2009 WL 2605314 at *38, footnote 30 (S.D. Tex. Aug. 21. 2009). It does not resolve the agency status of brokers. *See Id.*

14. In this matter, Club ICU and Canopius, each through their own intermediary agents, negotiated the inclusion of a modifying endorsement excluding coverage for certain actions and suits. As a result, Section 4001.051 does not apply.

---

[11] See affidavits of Holly Beers and Laura Bates attached as Exhibits N and O, respectively, to Canopius' Motion for Summary Judgment and Memorandum of Law In Support. See also See deposition transcript of Karen Morgan 104:4-106:1-22 attached as Exhibit M to Canopius' Motion for Summary Judgment and Memorandum of Law In Support.

[12] See deposition transcript of Tom Wyatt 19:9-11, 21:20-22:21, 46:20-47:6; 52:10-16 attached as Exhibit L to Canopius' Motion for Summary Judgment and Memorandum of Law In Support; see also see deposition transcript of Karen Morgan 19:21-20:1, 43:4-23 attached as Exhibit M to Canopius' Motion for Summary Judgment and Memorandum of Law In Support.

15. Moreover, Steward argues Karen Morgan is the agent of Canopius under section 4001.052 of The Texas Insurance Code. However, this section is also inapplicable. Interestingly, section 4001.052 has not been cited or analyzed in any case law since it was re-codified on April 1, 2005. However, prior to the recodification, the predecessor statute was typically analyzed only where the issue was whether an insurer was bound by its own agent's wrongful or unauthorized acts.[13] That is not the case here because Tom Wyatt admits Karen Morgan was authorized to negotiate terms and secure insurance for Club ICU.[14] More importantly, there is no evidence Karen Morgan was not authorized to negotiate and secure insurance for Wyatt and Club ICU. Thus, section 4001.052 does not apply.

16. Additionally, no matter how the Court rules on the applicability of Sections 4001.051 and 4001.052, the testimony of Tom Wyatt and Karen Morgan is not discredited. Each testified several times Karen Morgan was the agent of Club ICU. Additionally, Tom Wyatt confirmed he left all decisions regarding his insurance up to Karen Morgan and that she was the person that should be contacted to discuss the specifics of Club ICU's coverage. Stated differently, it is undeniable that Tom Wyatt empowered Karen Morgan to negotiate and secure coverage for Club ICU on his behalf. Thus, Tom Wyatt appointed Karen Morgan as the agent of Club ICU and is bound by the policy she negotiated, whose terms included an Assault and Battery Exclusion Endorsement.

---

[13] *See, e.g., Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998) (analyzing article 21.02 in the context of an insurer's representations regarding the quality of investments); *Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 796 (Tex. App.—Dallas 2011, no pet.) (discussing the authority granted under article 21.02 as it relates to an agent's misrepresentation of policy coverage binding the insurer); *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 760 (5th Cir. 2002) (discussing article 21.02 in the context of a soliciting agent's power to issue certificates of insurance and/or modify the policy); *A.I. Credit Corp. v. Hi-Tech Communications, Inc.*, 2002 WL 389424, at *3 (Tex. App.—Houston [14th Dist.] Mar. 14, 2002, no pet.) (noting "article 21.02 creates an implied agency relationship only with regard to the liabilities, duties, requirements, and penalties set forth in chapter 21....")

[14] See deposition transcript of Tom Wyatt 19:9-11, 21:20-22:21, 46:20-47:6; 52:10-16 attached as Exhibit L to Canopius' Motion for Summary Judgment and Memorandum of Law In Support.

6

### C. Canopius did provide the statutory notice to Wyatt regarding his misrepresentations in the application.

17. It is also Canopius' position the relevant insurance policies should be declared *void ab initio* because the policies were secured as a result of a material misrepresentation made by Tom Wyatt. In support, Canopius provided the testimony of Tom Wyatt and Karen Morgan as well as affidavits of Laura Bates and Holly Beers. Such evidence establishes Tom Wyatt made a false, material misrepresentation with the intent to deceive and the misrepresentation was relied upon by Canopius.[15]

18. Steward attempts to defeat this overwhelming evidence by arguing Canopius waived a material misrepresentation argument by not providing statutory notice. In support, Steward provides <u>nothing</u>. Regardless, notice was provided on May 16, 2013, well within the time period proscribed by statute.[16]

19. Canopius first received notice of Steward's claim on May 1, 2013.[17] At this time, Canopius reviewed the underlying petition and first learned that a murder occurred on Club ICU's premises in 2008, merely one year before Tom Wyatt's original commercial insurance application with Canopius was completed wherein he represented that no crimes had occurred on Club ICU's property the three previous years.[18] Accordingly, Canopius had 91 days to notify Tom Wyatt that it would refuse to be bound by the policy based on the misrepresentation. *See* Tex. Ins. Code Ann §705.005 (2007). As such, on May 16, 2013, well within the 91 day statutory period, Canopius issued notice to Tom Wyatt that it refused to be bound by the policy

---

[15] See Pages 13-15 of Canopius' Motion for Summary Judgment and Memorandum of Law In Support.
[16] See Reservation of Rights Letter dated May 16, 2013 attached as Exhibit "B."
[17] See Response to Interrogatory Number 5 in Plaintiff's Objections and Responses to Defendant Debra Steward's First Set of Interrogatories attached to this Reply as Exhibit "A."
[18] See Reservation of Rights Letter dated May 16, 2013 attached as Exhibit "B."

7

based on his material misrepresentation.[19] Thus, statutory notice was provided. Consequently, Steward's argument fails as a matter of law.

20. Moreover, there is no evidence before this Court disputing Tom Wyatt made a false, material, misrepresentation that was relied upon by Canopius. Therefore, Canopius' summary judgment should be granted and the policies should be declared *void ab initio* due to Tom Wyatt's material misrepresentation.

> D. **Canopius may secure a declaratory judgment on the insurer's duty to indemnify before the underlying tort suit proceeds to judgment**.

21. Finally, an insurer may secure a declaratory judgment on the insurer's duty to indemnify before the underlying tort suit proceeds to judgment if the same reasons that negate the duty to defend likewise negate any possibility insurer will ever have a duty to indemnify. *Farmers Tex. County Mut. Ins. Co. v. Robert Griffin*, 955 S.W.2d 81, 83 (Tex. 1997).

22. In the instant case the controversy is justiciable because no facts can be developed in the Underlying Action which will bring the allegations made against Club ICU in the Underlying Action into coverage. Stated differently, the same reasons negating Canopius' duty to defend also negate any possibility Canopius will ever have a duty to indemnify, namely that the Assault and Battery Exclusion Endorsement controls, no matter the circumstances, and precludes coverage for the claims asserted by the Plaintiffs in the Underlying Action. *See id.* at 84.

## II. <u>CONCLUSION</u>

23. Canopius and Club ICU, through their authorized agents, agreed any policy issued by Canopius to Club ICU would contain an Assault and Battery Exclusion Endorsement. Therefore, the policies should be reformed to reflect the true agreement and Canopius has no duty to defend or indemnify Tom Wyatt or Club ICU because those duties are negated by the endorsement.

---

[19] Id.

24. Additionally, the policies were undoubtedly procured as a result of a material misrepresentation made by Tom Wyatt when he failed to identify a violent, gang related crime had occurred on the property prior to his first policy with Canopius or in any renewal application. Further, Steward's effort to argue Canopius waived its right to assert material misrepresentation due to lack of notice fails because notice was provided. Therefore, the policies were obtained through a material misrepresentation and should be declared *void ab initio*.

    Respectfully submitted,

    DONATO, MINX, BROWN & POOL, P.C.

    By: _____
    Robbie A. Moehlmann, SBN 00789905
    Federal ID. No. 25235
    3200 Southwest Freeway, Suite 2300
    Houston, Texas 77027
    Tel: (713) 877-1112
    Fax: (713) 877-1138
    rmoehlmann@donatominxbrown.com

**ATTORNEY FOR PLAINTIFF
CANOPIUS US INSURANCE, INC.**

"of counsel"
Jared G. Flynn
State Bar No. 24058693
Federal ID No. 938891
3200 Southwest Freeway, Suite 2300
Houston, Texas 77027
Tel: (713) 877-1112
Fax: (713) 877-1138
jflynn@donatominxbrown.com

## CERTIFICATE OF SERVICE

I hereby certify a true and correct copy of the foregoing was served on all counsel of record by facsimile and/or electronic filing with the United States District Court for the Southern District of Texas on the 7th day of July, 2014.

Brian H. Crockett
10565 Katy Freeway, Suite 400
Houston, Texas 77024
888.779.3237-Fax

Reginald McKamie, Sr.
1210 Antoine Drive
Houston, Texas 77055
713.465.2894 – Fax

_____
Robbie Moehlmann

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CANOPIUS US INSURANCE, INC. § | |
| § | |
| v. § | CIVIL ACTION NO. 4:13-CV-01624 |
| § | |
| TOM WYATT D/B/A/ BLUE OCEAN CLUB § | |
| A/K/A CLUB ICU, DEBRA AND CURTIS § | |
| STEWARD, INDIVIDUALLY AND AS § | |
| REPRESENTATIVES OF THE ESTATE OF § | |
| CURTIS STEWART III, AND KIMBERLY § | |
| KIBBLE AS NEXT FRIEND OF C.S. AND § | |
| L.S., MINORS § | |

**AFFIDAVIT**

STATE OF TEXAS          §
                                      §
COUNTY OF HARRIS    §

Before me, the undersigned authority did on this day personally appear, Robbie A. Moehlmann, known to me and upon oath administered by me stated as follows:

"My name is Robbie A. Moehlmann and I am the attorney of record for Canopius US Insurance, Inc., ("Canopius") in the above referenced matter. I am over 18 years of age and have never been convicted of a felony or any crime involving moral turpitude. I am of sound mind and in all respects competent to make this Affidavit and I have personal knowledge of the facts stated herein.

I have reviewed Canopius' Reply to Debra Steward's Response to Motion for Summary Judgment and Memorandum of Law in Support of its Motion for Summary Judgment and the exhibits attached thereto and state Exhibit "A" is a true and correct copy of Plaintiff's Objections and Responses to Defendant Debra Steward's First Set of Interrogatories and Exhibit "B" is a true and correct copy of the Reservation of Rights Letter sent to Tom Wyatt on May 16, 2013.

Further Affiant sayeth not."

_____
Robbie A. Moehlmann

SUBSCRIBED TO BEFORE ME, the undersigned Notary Public, on this 7th day of July, 2014, by Robbie A. Moehlmann, known to me to be the person who signed the foregoing instrument, to certify which witness my hand and seal of office.

*Alana Gayle Ringenberg*
Notary Public in and for
The State of Texas

ALANA GAYLE RINGENBERG
My Commission Expires
October 15, 2016