IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CANOPIUS US INSURANCE, INC. | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. H-13-1624** |
| | § | |
| TOM WYATT, *et al.* | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Pending before the Court is Plaintiff's Motion for Summary Judgment **(Instrument No. 23).**

## I.

### A.

Plaintiff Canopius US Insurance, Inc. ("Canopius") originally brought this action for declaratory judgment in federal court on June 3, 2013, seeking a finding that Canopius has no obligation to defend or indemnify Defendant Tom Wyatt under the terms of Canopius's insurance policies. (Instrument No. 1). Canopius brought suit against Tom Wyatt, d/b/a Blue Ocean Club a/k/a Club ICU ("Wyatt"), Debra Steward and Curtis Steward, Individually and as Representatives of the Estate of Curtis Steward III, and Kimberly Kibble as next friend of C.S. and L.S., minors (collectively "the Steward family"). (Instrument No. 1 at 2). The Steward family is not party to the insurance policy that is the subject of this action, but the family members have been named as defendants by Canopius in an effort to bind them to the judgment of the Court. (Instrument No. 1 at 3).

**B.**

Canopius's declaratory judgment action involves claims arising from a shooting at Wyatt's establishment that occurred on September 2, 2012. Following the shooting, the Steward family filed suit against Wyatt in *Debra and Curtis Steward, Individually and as Representatives of the Estate of Curtis Steward III and Kimberly Kibble as next friend to C.S. and L.S., Minors vs. Tom Wyatt D/B/A/ Blue Ocean Club A/K/A Club ICU* in the 125th Judicial District Court of Harris County, Texas (hereinafter the "Underlying Action"). (Instrument       No. 1-7).

In the original petition filed in state court, the Steward family alleges that in September 2012, Defendant Wyatt owned a nightclub called Club ICU in Harris County, Texas. Wyatt owned, operated, and controlled the operation of Club ICU. Wyatt did not hire or retain any security on Club ICU premises. On or about September 2, 2012, a fight involving Club ICU patrons broke out in the parking lot. Wyatt was on the premises at the time and attempted to break up the fight with an electric Taser that he owned. Wyatt did not contact law enforcement for assistance in breaking up the fight. (Instrument No. 1-7 at 3).

As the fight escalated, "Scooby," a patron of Club ICU and a relative of Wyatt, drew a gun. Curtis Steward and a friend attempted to wrestle the weapon away from Scooby's hand. However, Scooby shot and mortally wounded Curtis Steward and his friend in the Club ICU parking lot, and went on to shoot four other people. Wyatt did nothing personally to stop the shooter. (Instrument No. 1-7 at 4). The shooting death of Curtis Steward at Club ICU resembled a previous shooting death in the Club ICU parking lot in 2008. After the shooting death in 2008, Wyatt did not hire security for Club ICU or take steps to warn patrons of any potential danger. (Instrument No. 1-7 at 4).

In the Underlying Action, the Steward family alleges claims of negligence, gross negligence, and premises liability arising from the September 2, 2012 shooting. (Instrument No. 1-7 at 3). The Steward family seeks actual damages resulting from the Wyatt's conduct and exemplary damages for Wyatt's negligence, gross negligence, and reckless disregard for the safety of the public. (Instrument No. 1-7 at 9).

## C.

The alleged duty to defend and indemnify in the Underlying Action is based on Commercial General Liability Policy No. OUS011002129 (hereinafter the "Policy"). (Instrument No. 1-4). The Policy was the fourth such policy Canopius issued to Wyatt. Canopius issued Wyatt Policy No. OUS011000527 (the "First Policy"), effective August 14, 2009 to August 14, 2010. (Instrument No. 1-1). The following year, Canopius issued Policy No. OUS011000944 (the "Second Policy") as a renewal of the First Policy, effective August 14, 2010 to August 14, 2011. (Instrument No. 1-2). The following year, Canopius issued Policy No. OUS01001435 (the "Third Policy") as a renewal of the Second Policy, effective August 14, 2011 to August 14, 2012. (Instrument No. 1-3). The Fourth Policy was issued as a renewal of the Third Policy, effective August 14, 2012 to August 14, 2013. (Instrument No. 1-4). There are no material differences between the policies. *See* (Instrument Nos. 1-1, 1-2, 1-3, 1-4).

On May 16, 2013, Canopius issued a Reservation of Rights to Wyatt stating that Canopius will defend Wyatt in the Underlying Action subject to the express understanding that it reserves all rights it may have under the Policy and does not waive any such rights by defense of the Underlying Action. (Instrument No. 1-8 at 2). Canopius explicitly reserved the right to withdraw its qualified defense in the Underlying Action at any time. (Instrument No. 1-8 at 2).

Canopius claims that it has no duty to defend or indemnify Wyatt in the Underlying Action because an "Assault and/or Battery Exclusion Endorsement" (the "Exclusion") that excludes coverage on claims resulting from assault or battery. (Instrument No. 23 at 10). The applicable Exclusion states as follows:

> The coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured or Insured's employees, patrons or any other person. Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision. Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property. The sentence "This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property" is deleted from the Commercial General Liability Coverage Form, Section I, Item 2., Exclusions, a.

(Instrument No. 23-16 at 2).

Canopius alleges that Wyatt and Canopius agreed to the Exclusion prior to issuing the policies, and that the Exclusion is included in all of the applications, quotes, and binders for the four commercial insurance policies issued by Canopius to Wyatt. (Instrument No. 23 at 6). Canopius acknowledges that the Exclusion is absent from the relevant Policy, but claims that its absence is due to a scrivener's error. (Instrument No. 23 at 13). Canopius therefore seeks to reform the Fourth Policy to reflect the parties' allegedly true agreement and include the Exclusion. (Instrument No. 23 at 10). Canopius alleges that because the Underlying Action stems from the assault or battery of victims of the September 2, 2012 shooting at Wyatt's establishment, any claims in the Underlying Action fall within the Exclusion and outside of the coverage of the reformed Fourth Policy. (Instrument No. 23 at 16). Canopius claims that it therefore has no duty to defend. (Instrument No. 23 at 16). Furthermore, Canopius claims that it has no duty to indemnify because there are no claims that can be brought in the Underlying Action that would fall within coverage of the reformed Fourth Policy. (Instrument No. 23 at 17).

4

Canopius also claims that it has no duty to defend because the Fourth Policy is void due to Wyatt's material misrepresentation. (Instrument No. 23 at 17). Canopius alleges that while completing the commercial insurance application for Canopius in 2009 prior to the issuance of the First Policy, Wyatt failed to disclose a murder that occurred at Wyatt's establishment in 2008. (Instrument No. 23 at 18). Canopius further claims that Wyatt failed to disclose the 2008 murder on the application despite knowing that Canopius would rely on the application in deciding whether to issue an insurance policy, and that Canopius would not have issued an insurance policy if it had been aware of the 2008 murder. (Instrument No. 23 at 18–19). Canopius therefore claims that Wyatt's failure to disclose constitutes a material misrepresentation, and the First Policy and the three subsequent renewals should be declared *void ab initio*. (Instrument No. 23 at 19).

Canopius has filed a motion for summary judgment (Instrument No. 23) and the Steward family has filed a response (Instrument No. 25). Canopius has filed a reply. (Instrument No. 26).

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).

The "movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25(1986)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit

under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of evidence to support the nonmovant's case, the movant does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

After the moving party has met its burden, in order to "avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The party opposing summary judgment cannot merely rely on the contentions contained in the pleadings. *Little*, 37 F.3d at 1075. Rather, the "party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim," *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 457, 458 (5th Cir. 1998); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Although the court draws all reasonable inferences in the light most favorable to the nonmoving party, *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008), the nonmovant's "burden will not

be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux*, 402 F.3d at 540 (*quoting Little*, 37 F.3d at 1075). Similarly, "unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. Am's Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997); *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

In deciding a summary judgment motion, the district court does not make credibility determinations or weigh evidence. *Chevron Phillips*, 570 F.3d 606, 612 n.3 (5th Cir. 2009). Nor does the court "sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *Ragas,* 136 F.3d at 458. It is not necessary "that the entire record in the case ... be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered." *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir.1988) Therefore, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## III.

Under Texas law, an insurer's duty to defend an insured is determined by examining the allegations in the petitions filed against the insured and the relevant insurance policy. *Guideone Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305 (Tex. 2006); *National Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). This standard is known as the "eight corners" rule. *Merchs. Fast Motor Lines* 939 S.W.2d at 141. When applying

the eight corners rule, courts are to give the allegations in the petition a liberal interpretation in favor of the insured. *Id.* Courts are to consider the allegations in light of the policy provisions without reference to their validity and without reference to what the parties know or believe to be the true facts. *See Argonaut S.W.Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973). Under the "eight corners" rule, the Court cannot read facts into the pleadings, look outside the pleadings, or "imagine factual scenarios which might trigger coverage." *Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 142.

## A.

Texas law provides a relevant exception to the application of the "eight corners" rule when examining insurance policies. *See Technical Automation Services Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 408 (5th Cir. 2012). "When a mutual mistake is alleged, the first task of the court is not to apply, perfunctorily, the 'eight corners' rule and then directly proceed to interpret the insurance policy. Instead, the first matter to address is whether the disputed provision results from an agreement between the parties." *Id.* (citing *Williams v. Glash*, 789 S.W.2d 261, 265 (Tex. 1990)). When the Court is determining whether a written contract is the result of mutual mistake, the parole evidence rule does not apply. *Technical Automation Services Corp.*, 673 F.3d at 408 (citing *Marcuz v. Marcuz*, 857 S.W.2d 623, 627 (Tex. App.—Houston [1st Dist.] 1993, no writ)). In such cases, extrinsic evidence will be admissible to show what the real agreement is. *Id.*

A mutual mistake is "one common to both or all parties, wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provision of a written agreement designed to embody such an agreement." *Simpson v. Curtis*, 351 S.W.3d 374,

378–379 (Tex. App.—Corpus Christi 2010, no pet.) (quoting *Allen v. Berrey,* 645 S.W.2d 550, 553 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.).

Mutual mistake of fact is grounds for reformation of a written contract. *Wright v. Gernandt,* 559 S.W.2d 864, 868 (Tex. App.—Corpus Christi 1977, no writ). "The underlying objective of reformation is to correct a mutual mistake made in *preparing* a written instrument, so that the instrument truly reflects the *original* agreement of the parties." *Cherokee Water Co. v. Forderhause,* 741 S.W.2d 377, 379 (Tex. 1987) (emphasis in original). The Court cannot make a contract that the parties did not make, but instead an actual agreement formed between the parties prior to drafting the instrument is required prior to reformation. *Id.*

The party seeking to reform a contract must show that: (1) the parties reached an agreement on a material term, but (2) the written contract does not reflect the parties' agreement because of a mutual mistake. *Thalman v. Martin,* 635 S.W.2d 411, 413 (Tex. 1982). The party seeking to reform a contract must establish the facts and circumstances warranting reformation by clear and convincing evidence. *Oldaker v. Travelers Ins. Co.,* 497 S.W.2d 402, 404 (Tex. Civ. App.—El Paso 1973, no writ). Mutual mistakes are generally established from the facts and circumstances surrounding the parties and the execution of the instrument. *Simpson,* 351 S.W.3d at 379. "A scrivener's error or typist's failure to embody the parties' true agreement in a written instrument is such a mistake as to afford ground for reformation, if the mistake is a mutual mistake." *Wright,* 559 S.W2d at 868; *see also Cornish v. Yarborough,* 558 S.W.2d 28, 32 (Tex. Civ. App.—Waco 1977, no writ) (scrivener's failure to embody true agreement in written instrument allows reformation for mutual mistake).

In its Motion for Summary Judgment, Canopius seeks to reform the Fourth Policy to include the Assault and Battery Exclusion Endorsement that was allegedly agreed upon by the

parties but was mistakenly absent in the First Policy and the three subsequent renewals because of scrivener's error. (Instrument No. 23 at 6). To reform the Fourth Policy, Canopius must show by clear and convincing evidence that (1) Wyatt and Canopius reached an agreement on the inclusion of the Exclusion in the First Policy and the three subsequent renewals, but (2) the written First Policy and the three subsequent renewals, including the Fourth Policy, do not reflect the parties' agreement because of a mutual mistake. *See Thalman*, 635 S.W.2d at 413.

1.

To satisfy the first requirement for reformation, Canopius must show that Wyatt and Canopius agreed that the First Policy and subsequent renewals would include the Assault or Battery Exclusion. Canopius has provided evidence that it claims shows an agreement between the parties to include the Exclusion in the First Policy and the three subsequent renewals. The initial application for coverage submitted in 2009 by Wyatt's insurance agent, Patriot Insurance Agency, Inc. ("Patriot Insurance"), includes the Exclusion in the "Commercial General Liability Section." (Instrument No. 23-1 at 5). Canopius also alleges that all of the quotes and binders issued by Canopius to Wyatt prior to the issuance of the four commercial insurance policies included reference to the Exclusion. (Instrument No. 23 at 13). The quote and binder issued by Canopius prior to issuing the First Policy include the Exclusion in the "Terms and Conditions" sections, (Instrument Nos. 23-2 at 4; 23-3 at 4), as does the quote and binder for the Second Policy. (Instrument Nos. 23-5 at 4; 23-6 at 4). Furthermore, the quote and binder for the Third Policy and Fourth Policy likewise contain the Exclusion in the "Terms and Conditions" sections. (Instrument Nos. 23-7 at 4; 23-8 at 4; 23-9 at 4; 23-10 at 4).

Canopius further points to the testimony of Karen Morgan[1] at Patriot Insurance as evidence of the agreement between the parties to include the Exclusion in the First Policy. Karen Morgan testified that Wyatt authorized her to act on his behalf to obtain and procure insurance for him for the four policies in question. (Instrument No. 23-13 at 3). She also testified that she discussed information contained in the quotes and binders with Wyatt prior to requesting to bind the policy, and conveyed to Wyatt her understanding of what would and would not be covered in the policy. (Instrument No. 23-13 at 12, 23, 27–28). Karen Morgan's testimony indicates that she believed the quotes and binders for the four policies in question (Instrument Nos. 23-2, 23-3, 23-5, 23-6, 23-7, 23-8, 23-9) reflected the deal that was negotiated and agreed upon between Canopius and Wyatt. (Instrument No. 23-13 at 11–12, 17, 22–23). She testified that she believed that the Exclusion would be included in the First Policy, and all subsequent renewals thereafter, as part of the deal she negotiated on behalf of Wyatt. (Instrument No. 23-13 at 14–15, 17, 22). She specifically testified that she believed the Fourth Policy, covering the year when the shooting in the Underlying Action occurred, would have included the Exclusion. (Instrument No. 23-13 at 21–22).

Karen Morgan further testified that, based on her experience, the Exclusion would routinely be included in commercial policies issued to bars and taverns. (Instrument No. 23-13 at 10–11, 16–17). Canopius also points to an affidavit provided by the Vice President of Underwriting for Canopius, who testified that Canopius's underwriting guidelines require the inclusion of an assault or battery exclusion endorsement for any commercial insurance policy for a bar or tavern where liquor exceeds 30% of total sales. (Instrument No. 23-15 at 2). According

---

[1] Karen Morgan is also referred to as "Karen Murphy" in the Steward family's Response (Instrument No. 25) and "Carol" in Wyatt's deposition (Instrument No. 23-12). However, none of the parties claim that more than one woman at Patriot Insurance obtained insurance on Wyatt's behalf, and the Court will interpret all references in the record to "Karen Murphy" and "Carol" to mean "Karen Morgan."

to the affidavit, because liquor exceeded 30% of total sales at Wyatt's establishment when the policies were issued, any commercial insurance policy issued by Canopius to Wyatt would have included the Exclusion in order to comply with Canopius's underwriting requirements. (Instrument No. 23-15 at 3).

In response to Canopius's Motion for Summary Judgment, the Steward family does not contest the evidence provided by Canopius. (Instrument No. 25). Instead, they claim that Karen Morgan acted as an agent for Canopius during her negotiations to secure general commercial insurance for Wyatt, as opposed to Wyatt. (Instrument No. 25 at 7–8). In support of this argument, the Steward family relies on Sections 4001.051 and 4001.052 of the Texas Insurance Code, claiming that Karen Morgan performed acts for Canopius that qualifies her as the agent of Canopius, not Wyatt. (Instrument No. 25 at 7).

The Steward family's reliance on Sections 4001.051 and 4001.052 of the Texas Insurance Code is misplaced. Section 4001.051 applies only "for purposes of the liabilities, duties, requirements, and penalties provided by this title," and primarily attributes liability for violations of insurance code provisions, while Section 4001.052 designates any "person who solicits an application for life, accident, or health insurance or property or casualty insurance" as an agent for the insurer. Tex. Ins. Code. §§ 4001.051–52. These statutes generally concern actions undertaken by insurance agents on behalf of insurers, such as examining risks or soliciting insurance on behalf of the insurer. *See* Tex. Ins. Code §§ 4001.051–52. Courts have generally applied Section 4001.051 in cases regarding code violations by insurers. *See, e.g., Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 317 n.23 (5th Cir. 2005) (finding that a mortgage lender that solicited insurance applications to its borrowers was the agent of the insurer in a case involving DTPA, insurance code violations, and breach of contract); *Penn-America Ins. Co. v.*

*Zertuche*, 770 F. Supp.2d 832, 841–42 (W.D. Tex. 2011) (finding that a commercial insurance underwriter that received and processed premiums was the agent of the insurer in a case involving DTPA and Texas Insurance Code claims). The Steward family has not shown why Section 4001.051, generally applied in cases involving Texas Insurance Code violations, should be applied when deciding Canopius's duty to defend and indemnify negligence claims arising out of a shooting. *See* (Instrument No. 1-7). Moreover, the Steward family has not explained how identifying Karen Morgan as Canopius's agent under Section 4001.051 or 4001.052 precludes her from also being Wyatt's agent. *See Monumental Life*, 403 F.3d at 314 (stating that an insurance agent may be deemed to have acted as the agent of both the insured an insurer); *Maintain, Inc. v. Maxson-Mahoney-Turner, Inc.*, 698 S.W.2d 469, 472 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e) (holding an "insurance agent can act as the agent of both the insured and the insurer by collecting the premium and delivering the policy for the carrier, and by procuring insurance for the insured").

Furthermore, the Steward family fails to explain how Sections 4001.051 and 4001.052 apply to or provide any evidence supporting their application here. *See* (Instrument No. 25 at 7–8). They provide no evidence that Karen Morgan performed any of the acts that might create an agency relationship between Karen Morgan and Canopius under Section 4001.051. *See* (Instrument No. 25 at 7–8). Specifically, they cite to no evidence that Karen Morgan "solicit[ed] insurance on behalf of the insurer," "examine[d] or inspect[ed] a risk," or "solicit[ed] an application for . . . insurance" on behalf of Canopius. *See* Tex. Ins. Code §§ 4001.051–52; (Instrument No. 25 at 7–8). Karen Morgan testified that she does not sell insurance for Canopius and has no authority with that company. (Instrument No. 23-13 at 26). The record also suggests that in her efforts to procure insurance for Wyatt, Karen Morgan might have contacted providers

other than Canopius and its agent RSI. (Instrument No. 23-13 at 3). The Steward family cites to no evidence that actually supports the allegation that Karen Morgan represented Canopius's interests in soliciting insurance while obtaining insurance for Wyatt. *See* (Instrument No. 25 at 6). Overall, the Steward family does not introduce any evidence to demonstrate that Sections 4001.051 and 4001.052 are factually relevant for creating an agency relationship between Karen Morgan and Canopius. *See* (Instrument No. 25).

In fact, the evidence available at summary judgment demonstrates the opposite. The record provides ample evidence showing an agency relationship between Karen Morgan and Wyatt. (Instrument Nos. 23-12; 23-13). "An agent has actual authority to act for the principal when the principal intentionally confers authority on the agent." *Ebner v. First State Bank*, 27 S.W.3d 287, 300 (Tex. App.—Austin 2000, pet. denied). Wyatt testified that he hired Patriot Insurance, and by extension its representative Karen Morgan, to obtain insurance for him. (Instrument No. 23-12 at 13, 27). Wyatt's testimony expressly states that he authorized Karen Morgan to decide whether an assault and battery exclusion should or should not have been included in the policy. (Instrument No. 23-12 at 26–27). Wyatt and Karen Morgan both acknowledge that she was Wyatt's agent. (Instruments Nos. 23-12 at 12–13, 23–24, 26–27; 3–4, 26–28). Karen Morgan testified that she was authorized by Wyatt to act on his behalf. (Instrument No. 23-13 at 26). There is therefore sufficient evidence to establish that Karen Morgan was Wyatt's agent as a matter of law.

The Court finds that Canopius has shown by clear and convincing evidence that Canopius and Wyatt, through Karen Morgan, agreed that the First Policy and subsequent three renewals would include the Exclusion. Accordingly, Canopius has satisfied the first prong of the requirements for reformation.

14

**2.**

To satisfy the second requirement for reforming the Fourth Policy, Canopius must show by clear and convincing evidence that the First Policy and the three subsequent renewals, including the Fourth Policy that covers the period in the Underlying Action, do not reflect the parties' original agreement to include the Exclusion because of mutual mistake. A mutual mistake is "one common to both or all parties, wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provision of a written agreement designed to embody such an agreement." *Simpson*, 351 S.W.3d at 378–379. "A scrivener's error or typist's failure to embody the parties' true agreement in a written instrument is such a mistake as to afford ground for reformation, if the mistake is a mutual mistake." *Wright*, 559 S.W2d at 868.

For evidence that the failure of the First Policy and the three subsequent renewals to include the Exclusion was due to a mistake, Canopius provides an affidavit from a commercial underwriter at RSI International, Canopius's general managing agent. (Instrument No. 23-14). The affidavit states that the four policies issued by Canopius to Wyatt did not include the Exclusion because of a clerical error. (Instrument No. 23-14 at 3). Canopius also provides testimony from Karen Morgan stating that she expected that the four policies issued to Wyatt by Canopius would include the Exclusion. (Instrument No. 23-13 at 16–17). As the Court has already established that Karen Morgan acted as Wyatt's agent for the purposes of securing a general commercial insurance policy, her knowledge and expectations of what the policy contained can be imputed to Wyatt. *See La Sara Grain Co. v. First Nat. Bank of Mercedes*, 673 S.W.2d 558 at 563 (Tex. 1984) (holding that the knowledge obtained by an agent in the course of the agent's employment could be imputed to the principal); *Poth v. Small, Craig, & Wekenthin,*

*L.L.P.*, 967 S.W.2d 511, 515 (Tex. App.—Austin 1998, pet. denied) (holding that knowledge of an agent may be imputed to the principal).

Because Canopius has provided clear and convincing evidence that both parties were under the mistaken belief that the First Policy and three subsequent renewals contained the Exclusion, the Court concludes that Canopius has satisfied the second prong of the requirements for reformation of the Fourth Policy.

As Canopius has provided clear and convincing evidence satisfying both requirements of the test for reformation, the Court **GRANTS** Canopius's request to reform the Fourth Policy (Instrument No. 23-11) to include the Assault or Battery Exclusion Endorsement (Instrument No. 23-16 at 2), hereinafter referred to as the "Reformed Fourth Policy."

## B.

Under the "eight corners" rule, Canopius's duty to defend Wyatt is determined by examining the allegations in the petition and the Reformed Fourth Policy. *See Merchs. Fast Motor Lines*, 939 S.W.2d at 141. To establish a duty to defend, the pleadings must allege a claim that is potentially covered by the policy. *Fidelity & Guar. Ins. Underwriters v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982). Under Texas law, the insured party bears the initial burden of showing that a claim is potentially within the scope of coverage. *Great Amer. Ins. Co. v. Calli Homes, Inc.*, 236 F.Supp. 2d 693, 697 (S.D. Tex. 2002). If the insurer relies on policy exclusions in denying coverage, the burden is on the insurer to prove that one or more of the exclusions apply. *Id*. Once the insurer has proven that an exclusion applies, the burden shifts back to the insured, who must show that the claim falls within an exception to the exclusion. *See Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999).

The interpretation of an insurance policy is a question of law for this Court. *See New York Life Ins. Co. v. Travelers Inc. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). Under Texas law, a court shall apply the same rules of interpretation to insurance contracts as to contracts in general. *See id.* The Court's primary concern in interpreting a contract is to "ascertain and to give effect to the intentions of the parties as expressed in the instrument." *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). This effect can be achieved by reading all parts of a contract together. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). Courts should be particularly wary of isolating one clause from its surroundings or considering a clause, phrase, sentence, or section of a contract apart from other provisions. *Id.*; *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 346 (5th Cir. 2008).

When terms are defined in an insurance contract, those definitions control. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997). When terms are not defined in an insurance contract, they are to be given their plain, ordinary, and generally accepted meaning, unless the contract indicates that the terms were used in a technical or different sense. *See Ramsay v. Maryland American General Ins. Co.*, 533 S.W.2d 344, 346 (Tex. 1976).

If the contract is worded so that it can be given only one reasonable construction, it is enforced as written. *See Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). But if an insurance contract is susceptible to more than one reasonable interpretation, uncertainty must be resolved by adopting the construction that most favors the insured party. *Hudson*, 811 S.W.2d at 555. The Court must adopt the construction of an exclusionary clause urged by the insured party, so long as that construction is not unreasonable, and regardless of whether or not the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *See Glover v. Nat'l Ins.*

*Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977). In other words, ambiguously worded exceptions or limitations on liability shall be strictly construed against the insurer and in favor of the insured. *See Hudson*, 811 S.W.2d at 555.

This rule applies, however, only if the terms of the contract are deemed to be ambiguous. *See Great Amer.*, 236 F. Supp. 2d at 690. Whether or not an insurance contract is ambiguous is a question of law that the Court must decide. *Id*. The fact that the parties disagree as to coverage does not create an ambiguity. *Id*. Extrinsic evidence is not admissible for the purpose of creating an ambiguity. *Id*.; *see also Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994). If the language of the insurance contract is subject to more than one reasonable interpretation, the contract is ambiguous. *See Glover*, 545 S.W.2d at 761.

Here, Canopius argues that the "Assault and/or Battery" Exclusion applies to preclude coverage for any aspect of the Steward family's claims arising out of the September 2, 2012 shooting at Club ICU that forms the basis of the underlying action. (Instrument No. 23 at 14). The "Assault and/or Battery" Exclusion excludes from coverage claims arising out of "assault and/or battery, or out of any act or omission in connection with the prevention or suppression or such acts." (Instrument No. 23-16 at 2). The Exclusion further excludes from coverage "any charges or allegations or negligent hiring, training, placement or supervision." (Instrument No. 23-16 at 2). The Steward family does not specifically claim that the Exclusion, if included in the policy, is inapplicable. *See* (Instrument No. 25).

In support of its position, Canopius cites to *Garrison v. Fielding Reinsurance, Inc.*, 765 S.W.2d 536 (Tex. App.—Dallas 1989, writ denied). In *Garrison*, the underlying action against the insured involved claims of negligence, failure to warn, and failure to properly inspect property following a shooting death in the insured's parking lot. *Id.* at 537. The insurer brought a

declaratory judgment action seeking judgment that it had no duty to defend or indemnify the underlying action because the claims fell within the policy's "assault and/or battery" exclusion. *Id.* The exclusion at issue in *Garrison* stated that "this policy excludes claims arising out of assault and battery, whether caused by or at the direction of, the insured, his/her employee, patrons or any cause whatsoever." *Id.* In applying the "assault and/or battery" exclusion, the court held that the exclusion covered all claims in the underlying action that arose out of the shooting, because the claims would not have been brought absent the assault or battery. *Id.* at 538.

As in *Garrison*, the Underlying Action in this case involves negligence and failure to warn claims arising out of a shooting death in the insured's parking lot. *See id.* at 537; (Instrument No. 1-7 at 3–4). Although the precise language of the "assault and/or battery" exclusion in *Griffin* differs from the exclusion in the Reformed Fourth Policy, both exclusions exclude coverage for claims arising out of assault or battery. *See Garrison*, 765 S.W.2d at 537; (Instrument No. 23-16 at 2) (stating that "the coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery"). Just as none of the claims in the underlying lawsuit in *Garrison* would have been brought absent the shooting death, none of the claims in the Underlying Action in this lawsuit would have been brought absent the shootings in Club ICU's parking lot. *See Garrison*, 765 S.W.2d at 538; (Instrument No. 1-7 at 3–4). The Court finds that the Exclusion in the Reformed Fourth Policy covers all claims in the Underlying Action. The Exclusion therefore precludes Canopius's duty to defend against any claims in the Underlying Action.

Accordingly, Canopius's Motion for Summary Judgment on the duty to defend is **GRANTED**.

## IV.

"In liability insurance policies generally, an insurer assumes both the duty to indemnify the insured, that is, to pay all covered claims and judgments against an insured, and the duty to defend." *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 743-44 (Tex. 2009) (quoting 14 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 200:3 (3d ed. 2009). However, the duty to defend and the duty to indemnify "are distinct and separate duties." *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004). The Texas Supreme Court "noted in *Farmers Texas County Mutual Insurance Co. v. Griffin* that one duty may exist without the other." *Horton-Texas*, 200 S.W.3d at 743 (citing *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997)). "To that extent, the duties to defend and indemnify enjoy a degree of independence from each other." *Horton-Texas*, 300 S.W.3d at 744.

While analysis of the duty to defend has been strictly circumscribed by the eight-corners doctrine, it is well settled in Texas that the "facts actually established in the underlying suit control the duty to indemnify." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009). "As with any other contract, breach or compliance with the terms of an insurance policy is determined not by pleadings, but by proof." *Horton-Texas*, 300 S.W.3d at 744.

Canopius claims that it has no duty to indemnify Wyatt for any settlement or judgment awarded in the Underlying Action because the "Assault and/or Battery" Exclusion that negates the duty to defend likewise negates any possibility that Canopius will have a duty to indemnify. (Instrument No. 23 at 17). For support, Canopius cites to *Griffin*, in which an automobile liability insurance company sought a declaratory judgment that it had no duty to defend or indemnify the driver of a vehicle involved in a drive-by shooting. *Griffin*, 955 S.W.2d at 82. The relevant

policy limited coverage to injury and property damage resulting from an auto accident. *Id.* The court found that the term "auto accident" referred only to situations in which one or more vehicles are involved with another vehicle, person, or object, and therefore did not include drive-by shootings. *Id.* at 83. The court therefore held that the claims fell outside the policy's coverage and the insurer had no duty to defend. *Id.* Furthermore, because the plaintiff in the underlying action could never plead facts that would transform the drive-by shooting into an auto accident, the insurer likewise had no duty to indemnify. *Id.* at 84. In other words, "*the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*" *Id.* at 84 (emphasis in original).

The Court has already held that Canopius has no duty to defend the Underlying Action. Just as the plaintiff in the underlying action in *Griffin*, the Steward family can never plead facts in the Underlying Action that do not arise out of the September 2, 2012 shooting on Wyatt's property. The shooting constitutes a battery. *See Garrison*, 765 S.W.2d at 537. Because the "Assault and/or Battery" Exclusion precludes insurance coverage for that incident, the Court now finds that there is no possibility that Canopius will ever have a duty to indemnify Wyatt in the Underlying Action.

Accordingly, the Court finds that Canopius has no duty to indemnify Wyatt in the Underlying Action and **GRANTS** Canopius's Motion for Summary Judgment on the duty to indemnify.

## V.

Canopius also claims that there is no duty to defend or indemnify because of a material misrepresentation in Wyatt's application for insurance. (Instrument No. 23 at 17). However, because the Court has already determined that the "Assault and/or Battery" Exclusion in the

Reformed Fourth Policy bars coverage, the Court need not decide whether the policies issued to Wyatt are *void ab initio* due to material misrepresentation.

## VI.

Based on the foregoing, IT IS HEREBY ORDERED THAT Plaintiff Canopius's motion for summary judgment (**Instrument No. 23**) is **GRANTED**. Judgment is entered in favor of Plaintiff.

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this the 3rd day of September, 2014, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**